**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RAYMOND A. JOAO,

               Plaintiff,

     v.

EPIC SYSTEMS CORPORATION,

               Defendant.

Case No. 1:25-cv-00857

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER VENUE**</u>

Kristin Graham Noel (*Pro hac vice*)
Matthew J. Duchemin (*Pro hac vice*)
Bryce A. Loken (*Pro hac vice*)
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: (608) 251-5000
kristin.noel@quarles.com
matthew.duchemin@quarles.com
bryce.loken@quarles.com

Mitchell D. Cohen
VEDDERPRICE
1633 Broadway, 31st Floor
New York, NY 10019
Tel.: (212) 407-6980
mcohen@vedderprice.com


*Attorneys for Defendant Epic Systems*
*Corporation*

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................................ 2

   A.  First Filed and Pending S.D. of Florida Proceeding ......................................... 2

   B.  Post-Judgment Discovery is Ongoing in Florida ............................................... 4

   C.  Mr. Joao Forum Shopped To Avoid Florida and Thwart Epic's Enforcement ............... 6

   D.  Mr. Joao's Companies Are Located In Florida.................................................... 6

III.  LEGAL STANDARD...................................................................................................... 7

IV.   ARGUMENT ................................................................................................................... 8

   A.  The First-to-File Rule Dictates that This Action Should be Transferred to the Southern
       District of Florida................................................................................................ 9

   B.  Additionally or Alternatively, Section 1404(a) Further Dictates that This Action Should
       be Transferred to the S.D. Florida. ................................................................... 12

      1.  This Action Could Have Been Brought in the Southern District of Florida. ............ 13

      2.  Transfer Will Serve the Convenience of the Parties, the Convenience of the
          Witnesses, and the Interest of Justice. ....................................................... 13

V.    CONCLUSION.............................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*Blechman v. Ideal Health, Inc.*,
  668 F. Supp. 2d 399 (E.D.N.Y. 2009) ................................................................. 9, 10, 12, 18

*Breckenridge Pharm., Inc. v. KV Pharm. Co.*,
  No. 08-80963-CIV, 2009 WL 1404698 (S.D. Fla. May 19, 2009) .......................................... 15

*Cincinnati Ins. Co. v. O'Leary Paint Co.*,
  676 F. Supp. 2d 623 (W.D. Mich. 2009) ....................................................................... 15

*D.H. Blair & Co., Inc. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006) ..................................................................................... 8

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ............................................................................................. 16

*EasyWeb Innov., LLC v. Facebook, Inc.*,
  888 F. Supp. 2d 342 (E.D.N.Y. 2012) ......................................................................... 17

*EBW, Inc. v. Environ Prods., Inc.*,
  No. 1:96-CV-144, 1996 WL 550020 (W.D. Mich. July 8, 1996) ........................................... 12

*Eckhardt v. United States*,
  463 F. App'x 852 (11th Cir. 2012) ....................................................................... 18, 20

*Emps. Ins. of Wausau v. Fox Entm't Group, Inc.*,
  522 F.3d 271 (2d Cir. 2008) ............................................................................... 9, 11

*Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*,
  260 F. Supp. 3d 401 (S.D.N.Y. 2017) ......................................................................... 18

*Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*,
  No. 15-CV-62688, 2019 WL 2297524 (S.D. Fla. May 30, 2019) .............................................. 5

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.*,
  735 F. Supp. 581 (S.D.N.Y. 1990) ............................................................................. 14

*Guardian Life Ins. Co. of Am. v. Coe*,
  724 F. Supp. 3d 206 (S.D.N.Y. 2024) .................................................................... passim

*Hoffman v. Blaski*,
  363 U.S. 335 (1960) .............................................................................................. 8

*In re Cuyahoga Equip. Corp.*,
  980 F.2d 110 (2d Cir. 1992) ......................................................................... 8, 12, 13

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*,
  419 F. Supp. 2d 395 (S.D.N.Y. 2005) ................................................................ 14, 15, 20

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners*, Ltd.,
  411 F. Supp. 2d 458 (S.D.N.Y. 2006) ......................................................................... 10

QB\94324031.5

*JetBlue Airways Corp. v. Helferich Pat. Licensing, LLC*,
   960 F. Supp. 2d 383 (E.D.N.Y. 2013) ................................................................. 17

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
   599 F.3d 102 (2d Cir. 2010) ................................................................................. 7

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ............................................................................................. 8

*Posven, C.A. v. Liberty Mut. Ins. Co.*,
   303 F. Supp. 2d 391 (S.D.N.Y. 2004) ................................................................. 13

*Royal & Sunalliance v. Brit. Airways*,
   167 F. Supp. 2d 573 (S.D.N.Y. 2001) ................................................................. 14

*Samsung Elecs. Co. v. Solas Oled Ltd.*,
   No. 21 CIV. 5205 (LGS), 2022 WL 294631 (S.D.N.Y. Feb. 1, 2022) .................... 7

*Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco v. MGM Mirage*,
   No. 08CV03157(HB), 2008 WL 4974800 (S.D.N.Y. Nov. 24, 2008) ..................... 16

*Speedfit LLC v. Woodway USA, Inc.*,
   53 F. Supp. 3d 561 (E.D.N.Y. 2014) ............................................................. 7, 12, 17

*State Farm Mut. Auto Ins. Co. v. Plunkett*,
   No. 1:10CV184-SA-JAD, 2011 WL 2670063 (N.D. Miss. July 7, 2011) ............... 15

*TC Heartland LLC v. Kraft Foods Group Brands, LLC*,
   137 S. Ct. 1514 (2017) ......................................................................................... 12

*Tianhai Lace USA Inc. v. Forever 21, Inc.*,
   2017 WL 4712632 (S.D.N.Y. Sept. 27, 2017) ...................................................... 18

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ............................................................................................. 8

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*,
   899 F. Supp. 2d 235 (E.D.N.Y. 2012) ............................................................. 9, 11

**Statutes**

28 U.S.C. § 1391(b)(2) .......................................................................................... 13

28 U.S.C. § 1404(a) .......................................................................................... 8, 9

QB\94324031.5

## I.    INTRODUCTION

Defendant Epic Systems Corporation moves to transfer this matter to the United States District Court for the Southern District of Florida pursuant to the first-to-file rule and 28 U.S.C. § 1404(a). The convenience of the parties and the resources of this Court are best served by this case being transferred to the Southern District of Florida and consolidated with the first-filed, related action.

Plaintiff Raymond Joao has made a business out of obtaining patents of questionable validity, transferring them to LLCs he creates for the purpose of extracting settlement payments from broad swaths of a given industry, and draining the LLCs of any payments obtained. He followed that same playbook with respect to Decapolis Systems LLC. Mr. Joao is the sole member and founder of Decapolis Systems LLC, a Florida company with its principal place of business in West Palm Beach, Florida. Decapolis was formed for the purpose of acquiring two U.S. patents, from another company Mr. Joao owns, and using them to leverage nuisance settlements from dozens of companies across the United States to be paid out to Mr. Joao as the sole named inventors on the patents and to his attorneys.

Since February 2, 2022, Epic and Mr. Joao (through Decapolis) have been involved in the very patent litigation Mr. Joao uses as the basis for his present request for declaratory judgment. *Epic Sys. Corp. v. Decapolis Sys., LLC*, No 9:22-cv-80173-DMM, Dkt. 1 (S.D. Fla. Feb. 2, 2022). In that case, the Southern District of Florida—affirmed by the Federal Circuit—invalidated Decapolis' patents. *Id.*, Dkts. 78-79, 107. The court also found Decapolis' substantive claims and litigation tactics to be exceptional, and awarded Epic a judgment against Decapolis for attorneys' fees in the amount of $634,457.23. *Id.*, Dkts. 35, 117-18. Supplemental proceedings are presently underway in Florida with Epic seeking to collect its judgment from Decapolis and pierce the

corporate veil to collect from Mr. Joao. Informal discovery in the Florida action has already shown that Mr. Joao has emptied Decapolis' coffers, including the hundreds of thousands of dollars in settlements leveraged from other defendants. Yet, Mr. Joao (on behalf of Decapolis), now claims Decapolis cannot pay the judgment owed to Epic or even secure a bond for purposes of appealing the judgment. (Dkt. 1-2, ¶ 34). Mr. Joao now brings this declaratory judgment action in New York as a thinly veiled attempt to usurp the Southern District of Florida's authority and avoid the judgment altogether. Aside from lacking substantive merit, this action is merely another of Mr. Joao's attempts to drive up the cost of litigation, avoid facing the consequences of filing frivolous patent litigation, and protect his litigation-as-a-business model. This action should be transferred to the Southern District of Florida where the court is already intimately familiar with the parties, issues and case, and where applicable discovery is already underway.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    First Filed and Pending S.D. of Florida Proceeding

Decapolis is a non-practicing entity (sometimes referred to as a "patent troll") that has sued dozens of companies for patent infringement of two facially invalid patents. Even though Epic is a Wisconsin corporation with no place of business in Texas, Decapolis initially sued Epic in the Western District of Texas. *Decapolis Sys., LLC v. Epic Sys. Corp.*, No. 6:21-cv-00434, Dkt. 1 (W.D. Tex. Apr. 29, 2021). As venue was improper under Supreme Court precedent, Epic filed a Motion to Dismiss. *Id.*, Dkt. 10 (W.D. Tex. June 22, 2021). Instead of responding to the motion, Decapolis initiated lawsuits against two of Epic's customers in the W.D. of Texas, alleging that their use of Epic's software infringes the same patents, and then voluntarily dismissed the Epic suit without prejudice. *See Decapolis Sys., LLC v. Bexar Cnty. Hosp. Dist.*, No. 6:21-cv-01252, Dkt. 1 (W.D. Tex. Dec. 1, 2021); *Decapolis Sys., LLC v. Cent. Tex. Cmty. Health Ctrs.*, No. 6:21-

cv-01262, Dkt. 1 (W.D. Tex. Dec. 3, 2021); *Decapolis*, No. 6:21-cv-00434, at Dkt. 24 (W.D. Tex. Dec. 20, 2021).

To consolidate the dispute and protect its customers, Epic brought a declaratory judgment action against Decapolis in Decapolis' home jurisdiction, the Southern District of Florida, seeking a declaratory judgment of invalidity and non-infringement of the patents. *Epic Sys. Corp. v. Decapolis Sys., LLC*, No 9:22-cv-80173-DMM, Dkts. 1, 27 (S.D. Fla. Feb. 2, 2022). Epic's declaratory judgment pleading included a demand for its attorneys' fees, including under 35 U.S.C. § 285. *Id.*, Dkt. 27 at 8. Decapolis counterclaimed against Epic, asserting infringement of the patents. *Id.*, Dkts. 18, 33. Thereafter, Decapolis filed another duplicative lawsuit against two additional Epic customers in the Eastern District of Texas, asserting Epic's software infringed the same patents. *See Decapolis Sys., LLC v. UT Southwestern Health Sys.*, No. 2:22-cv-00159, Dkt. 1 (E.D. Tex. May 17, 2022).

On May 20, 2022, Epic moved for judgment on the pleadings under Rule 12(c), arguing that Decapolis' patents were patent-ineligible under 35 U.S.C. § 101. *Epic Sys. Corp.*, No 9:22-cv-80173-DMM, Dkt. 35. On December 1, 2022, the district court for the Southern District of Florida granted Epic's Rule 12(c) motion and held Decapolis' patents were invalid under § 101. *Id.*, Dkts. 78, 79. Decapolis appealed. On April 4, 2024, a mere two days after oral argument, the Federal Circuit summarily affirmed the district court's invalidity order. *Epic Sys. Corp. v. Decapolis Sys., LLC*, No. 2023-1302, Dkt. 37 (Fed. Cir. Feb. 21, 2024).

On July 30, 2024, the district court granted Epic's Motion for Attorneys' Fees in part, finding that Epic is entitled to its attorneys' fees both on the district court litigation and the Federal Circuit appeal because the case was exceptional. *Id.*, Dkt. 113, at 10. In particular, the court held (a) Decapolis' litigation conduct across the multiple cases against Epic and its customers was

dilatory, "if not fully spurious" and (b) Decapolis' patent claims were meritless on their face. *Id.*, Dkt. 113, at 10-12. On November 25, 2024, the court entered an order awarding Epic $634,457.23. *Id.*, Dkts. 117, 118.

On December 16, 2024, Decapolis appealed the Florida court's award of attorneys' fees but did not post a supersedeas bond under Fed. R. Civ. P. 62(b) to stay enforcement of the judgment. *Epic Sys. Corp. v. Decapolis Sys., LLC*, No. 2025-1289, Dkt. 1-1 (Fed. Cir. 2024); (Declaration of Bryce A. Loken ("Loken Decl."), ¶ 1, Ex. 1). Decapolis' appeal of the exceptional case finding is pending, with Decapolis' opening appellate brief due on February 14, 2025. (*Id.*).

### B.     Post-Judgment Discovery is Ongoing in Florida

On December 27, 2024, Epic filed its Motion for Writ of Execution against Decapolis with the Florida court. *Epic Sys. Corp.,* No 9:22-cv-80173-DMM, Dkt. 121. The Florida court issued the Writ of Execution against Decapolis on the same day for the $634,457.23 judgment. *Id.*, Dkt. 122. On January 14, 2025, Decapolis voluntarily served a small set of financial documents. (Loken Decl., Ex. 2).[1] These documents reveal that Decapolis received nearly $500,000 in revenue from settlements with various other defendants—net of the amounts paid to Decapolis' litigation counsel. (*Id.*, Ex. 2, at DECAPOLIS00036-38). Despite Epic's complaint putting Mr. Joao on notice that it intended to recover its attorneys' fees (*see supra* Sec. II.A.), Mr. Joao, as the sole member of Decapolis, promptly transferred nearly all of the settlement funds to himself personally, which is just another page out of the standard-operating playbook.[2] (*Id.*, at DECAPOLIS0012-13, DECAPOLIS0037-38).

---

[1] Pursuant to Fed. R. Civ. P. 5.2(a), the Court's ECF Privacy Policy, and Judge Furman's Individual Rules and Practices in Civil Cases Sec. 7.A., Epic redacted sensitive financial and account information from the documents submitted with this Motion.

[2] Mr. Joao had a separate and unrelated entity that previously faced a similar situation whereby a successful motion for attorneys' fees followed a finding that the appliable patents were invalid

Supplemental proceedings to enforce Epic's Judgment against Decapolis are ongoing. On January 30, 2025, Epic served written post-judgment discovery under Fed. R. Civ. P. 69(a)(2), as well as a Rule 30(b)(6) deposition notice, on Decapolis regarding the following non-limiting topics:

    (i)    Decapolis' past and present personal property, assets, financial status, and financial capitalization (e.g. assessment of capital structure, accounting methods, market capitalization, book value, etc.);

    (ii)    All transfers of funds, assets, or property by or to Decapolis from commencement of this action to present;

    (iii)    Decapolis' observance of corporate formalities;

    (iv)    Payments and/or transfers to or from Decapolis' law firm(s) of record;

    (v)    Decapolis' status or function as an alter ego or mere instrumentality; and

    (vi)    Any improper conduct or fraudulent purpose associated with Decapolis' operation(s) and/or creation.

(*Id.*, Ex. 3). On the same day, Epic also served document and deposition subpoenas on Mr. Joao pursuant to Rule 45 regarding similar topics in connection with Mr. Joao's role as Decapolis' sole member and officer. (*Id.*, Ex. 4). Upon completion of the depositions, Epic expects to implead Mr. Joao in the Florida action pursuant to Fla. Stat. Ch. 56 *et. seq. See Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, No. 15-CV-62688, 2019 WL 2297524, at *1–2 (S.D. Fla. May 30, 2019).

---

under Sec. 101. *See Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, No. CV 12-1138, 2016 WL 1267159, at *3 (D. Del. Mar. 31, 2016), *aff'd*, 714 F. App'x 1019 (Fed. Cir. Mar. 13, 2018) (awarding $1,000,000 in Sec. 285 attorneys' fees against Mr. Joao's entity based, *inter alia*, on litigation conduct that "created a tortuous path to resolution."). Indeed, during the bankruptcy proceedings, Mr. Joao, as the majority shareholder in the LLC, admitted under oath that the LLC transferred him millions of dollars which originated from the settlement payments the LLC received. *See In re Joao Bock Trasn. Sys., LLC*, Case No. 16-11249-MFW, Dkt. 17, at ¶ 14 (Bankr. D. Del. Feb. 28, 2017).

**C.      Mr. Joao Forum Shopped To Avoid Florida and Thwart Epic's Enforcement**

On December 7, 2024, Mr. Joao filed the instant declaratory judgment action against Epic in the Supreme Court of the State of New York, County of Westchester. (Dkt. 1-1). On December 27, 2024, Mr. Joao filed an Amended Complaint that was updated to reflect the aforementioned discovery occurring in Florida. (*Compare* Dkt. 1-2, ¶ 35, *with* Dkt. 1-1, ¶¶ 33-35). Mr. Joao seeks a declaratory judgment that he is not liable to Epic for the judgment against Decapolis, which is an issue that will be directly addressed by the supplemental proceedings in the Florida action. (Dkt. 1-2, ¶¶ 30-36).

On January 29, 2025, Epic removed this action from Westchester County to this Court. (Dkt. 1).

**D.      Mr. Joao's Companies Are Located In Florida**

In addition to Decapolis Systems, LLC, Mr. Joao has chosen to form and maintain at least eleven (11) other corporate entities—of which all but two are organized under Florida's laws. Those entities include:

- Amadora Systems, LLC (TX)

- Beteiro, LLC (FL)

- Caselas, LLC (FL)

- CommercializeMe.com, LLC (FL)

- Decapolis Digital, LLC (FL)

- Decapolis Solutions, LLC (FL)

- Greatgigz Solutions, LLC (FL)

- GTJ Ventures, LLC (NY)

- Joao Sports International, LLC (FL)

- NarrateMe.com, LLC (FL)

6

- Reviero, LLC (FL)

(Loken Decl., Ex. 5). Of the above entities, Mr. Joao has also used his company Greatgigz Solutions, LLC to target Epic and its customers. As with Decapolis, Epic has a pending action against Greatgigz in the Southern District of Florida, including Epic's pending Motion for Judgment on the Pleadings seeking invalidity of Greatgigz's asserted patents under 35 U.S.C. § 101. *Epic Sys. Corp. v. Greatgigz Sols.*, No. 9:22-cv-80276, Dkt. 1 (S.D. Fla. Feb. 18, 2022).

Beyond electing to organize nearly all of his companies under Florida law, Mr. Joao is no stranger to litigation across the country. In addition to the campaign against Epic and its customers, Mr. Joao, through his Decapolis and Greatgigz entities, has embarked on an aggressive litigation campaign, in multiple States, over multiple years, targeting over 80 corporate defendants. (Loken Decl., Ex. 6); *see also Epic Sys. Corp.,* No. 9:22-cv-80173-DMM, Dkt. 88-4, ¶ 4, Ex. 2 (S.D. Fla. Jan. 30, 2023).

## III.   LEGAL STANDARD

The first-to-file rule provides that "in determining the proper venue, where there are two competing lawsuits, the first suit should have priority." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010). "The cases need not be identical for the first-to file rule to apply, but they must have substantial overlap." *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 571 (E.D.N.Y. 2014). In applying the first-to-file rule, it is in the discretion of the district court to stay, transfer, or dismiss the later-filed action. *Id*. "When one of two competing suits in a first-to-file analysis is a declaratory judgment action, district courts enjoy a 'double dose' of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action *and* discretion when considering and applying the first-to-file rule and its equitable exceptions." *Samsung Elecs. Co. v. Solas Oled Ltd.*, No. 21 CIV. 5205 (LGS), 2022 WL 294631, at *3 (S.D.N.Y. Feb. 1, 2022).

7

In addition, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). District courts have wide discretion in deciding motions to transfer. *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992); *see also Van Dusen v. Barrack*, 376 U.S. 612 (1964). The threshold inquiry is whether the action could have been brought in the proposed transferee venue. *Id; see also Hoffman v. Blaski*, 363 U.S. 335, 344-44 (1960). Once a defendant meets that threshold, the court may consider whether the convenience of the parties and witnesses and the interest of justice justifies a transfer. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).

The Second Circuit has listed the following factors as appropriate to consider in determining whether to grant a motion to transfer venue:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice.

*Guardian Life Ins. Co. of Am. v. Coe*, 724 F. Supp. 3d 206, 213 (S.D.N.Y. 2024) (*quoting D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006)). "There is no rigid formula for balancing these factors and no single one of them is determinative. Instead, weighing the balance is essentially an equitable task left to the Court's discretion." *Id*. (Internal quotations omitted).

## IV.    ARGUMENT

The Southern District of Florida is the proper forum for this action for two independent reasons. ***First***, the first-to-file rule dictates that this second-filed action should be transferred to the

S.D. of Florida. **Second**, additionally or in the alternative, this action should be transferred to the S. D. of Florida pursuant to 28 U.S.C. § 1404(a).

### A.    The First-to-File Rule Dictates that This Action Should be Transferred to the Southern District of Florida.

The first-to-file rule dictates that this action be transferred to Florida so that it may be heard alongside Epic's ongoing collection efforts and supplemental proceedings. The first-to-file rule provides that "where there are two competing lawsuits, the first suit should have priority." *Emps. Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008). For an action to be a "first-filed" action, the first and subsequently filed case must "have either identical or substantially similar parties and claims." *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012).

There are only two exceptions to the first-to-file rule: (1) where "special circumstances" warrant giving priority to the second-filed suit; and (2) where the "balance of convenience" favors the second-filed action. *Id*. The "special circumstances" exception is rare and generally only applies where "the first-filed was an anticipatory declaratory judgment action" or "where forum shopping *alone* motivated the choice of the situs for the first suit." *Id*. at 276-77 (emphasis in original). The "balance of convenience" exception analyzes the same convenience factors as a Section 1404(a) motion to transfer. *Id*. at 275. Where the convenience factors are "even or inconclusively tilted," the first-filed action should be given deference. *Id*.

For example, in *Blechman v. Ideal Health, Inc.*, the court held that the first-to-file rule dictated that a declaratory judgment action filed six days after the first-filed action should be transferred. 668 F. Supp. 2d 399 (E.D.N.Y. 2009). There, the plaintiff in the first-filed action brought breach of contract claims in the District of Massachusetts. *Id.* at 402. Six days later, the defendant in the Massachusetts action brought a declaratory judgment in New York State Supreme

Court, which was timely removed to federal court. *Id*. Once removed, the plaintiff in the first-filed action moved to transfer the declaratory judgment to Massachusetts. *Id.* The court held that "the first-filed rule favors transfer to the District of Massachusetts, albeit to a minimal extent given the short span of time between the two filings." *Id*. at 405. The court determined that due to the short span of time between the actions, the "bulk of the Court's determination depends upon the [convenience] factors." *Id*. There, like here, the convenience factors weighed in favor of transfer because Massachusetts was more convenient for the parties and witnesses, Massachusetts was the locus of operative facts, and Massachusetts state law governed the case. *Id*.

Here, compared to *Blechman*, the first-to-file rule counsels even more strongly in favor of transfer to Florida. Unlike in *Blechman* where six days separated the two actions, the Florida action was filed nearly three years prior to Mr. Joao's present declaratory judgment action. Moreover, as detailed below, just as in *Blechman*, the present action and the Florida action involve substantially the same parties and claims, Florida is the locus of operative facts, and Florida law governs Epic's request to pierce Decapolis' veil and implead Mr. Joao to hold him liable for the judgment against Decapolis.

Regarding the parties, "the assessment of whether the 'first-filed' rule is applicable, the Second Circuit plainly does not require the first-filed action and the subsequent action to consist of identical parties." *Blechman*, 668 F. Supp. 2d at 244. Rather, while Mr. Joao is not a named party in the Florida action, he is the sole member and officer of Decapolis. Mr. Joao and Decapolis are therefore substantially the same party. *See Int'l Equity Invs., Inc. v. Opportunity Equity Partners*, Ltd., 411 F. Supp. 2d 458, 464–65 (S.D.N.Y. 2006) (holding that when the sole member of an LLC is a party, the LLC does not need to be named as a party to represent the interests of the LLC).

Regarding claims, they directly overlap in both actions. Mr. Joao is seeking a declaration that he is not liable for the judgment owed by Decapolis *in the Florida action*. Mr. Joao's entire action is predicated on the fact that Epic can and will seek to pierce the corporate veil to recoup the funds that Mr. Joao improperly took from Decapolis that would have satisfied the judgment obtained by Epic. The claims in this action and the Florida action are, therefore, directly overlapping. Mr. Joao's individual liability for the judgment against Decapolis will be decided by the Southern District of Florida. Should the actions proceed in separate courts, both courts will be asked to rule on the same issue. The claims in each action are therefore identical, if not "sufficiently similar," and application of the first-to-file rule is proper. *See Wyler-Wittenberg*, 899 F. Supp. 2d at 244-47.

Neither exception to the first-to-file rule is applicable here. ***First***, there are no "special circumstances" in this case. The Florida action was not brought as an anticipatory declaratory judgment action to this lawsuit, nor was the choice to bring the first action in Florida a result of forum shopping. *See Emps. Ins. of Wausau*, 522 F.3d at 275. Rather, Epic brought the Florida action to protect itself and its customers from Decapolis' campaign of threats and actual patent litigation. Epic brought the suit against Decapolis in Decapolis' own home venue, where Decapolis is organized and has its principal place of business. *Epic Sys. Corp.,* No 9:22-cv-80173-DMM, Dkt. 27, ¶ 5 (S.D. Fla. April 14, 2022); *see id.*, Dkt. 33, ¶ 5. That action has been venued in the Southern District of Florida since February 2, 2022 and Plaintiff should not be allowed to circumvent it now. The only "forum shopping" occurring is by Mr. Joao, who no longer wants to be in a court that has already held his litigation tactics to be exceptional.[3]

---

[3] Nor is forum shopping a new tactic to Mr. Joao. As sole member and officer of Decapolis, he controlled the patent litigation, including suing Epic in the W.D. Texas, where Epic does not reside, is not incorporated and has no regular and established place of business. This is improper under

*Second*, and as discussed further in the next section, like in *Blechman*, convenience does not favor continuing this action in this Court. *See id*. Rather, because transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice, this action should be transferred to the Southern District of Florida to be resolved alongside Epic's collection efforts there. Transfer of this action to Florida will better facilitate coordination among the parties and will place the dispute before a court already familiar with the central issues in the case. This will serve the underlying purposes of the first-to-file rule: "to avoid conflicting decisions and promote judicial efficiency, while respecting principles of federal comity." *Speedfit LLC*, 53 F. Supp. 3d at 571.

### B.    Additionally or Alternatively, Section 1404(a) Further Dictates that This Action Should be Transferred to the S.D. Florida.

Additionally, or in the alternative, convenience and judicial efficiency dictate that this action be transferred to the Southern District of Florida so that it may be heard alongside Epic's supplemental proceedings against Decapolis and Mr. Joao. In determining whether an action should be transferred pursuant to Section 1404(a), the Court must first consider if the action could have been brought in the proposed venue in the first place. *In re Cuyahoga Equip. Corp.*, 980 F.2d at 117. The Court may then consider whether convenience justifies a transfer. An action need not involve the exact same parties or claims to be properly transferred. *See EBW, Inc. v. Environ Prods., Inc*., No. 1:96-CV-144, 1996 WL 550020, at *3 (W.D. Mich. July 8, 1996) ("As for EBW's suggestion that all of the issues raised in both actions must be identical, this proposition is likewise

---

United States Supreme Court precedent. *TC Heartland LLC v. Kraft Foods Grp. Brands, LLC*, 581 U.S. 258 (2017). Decapolis has no ties to Texas, other than choosing it as a preferred venue for patent litigation.

unsupported by any citation to authority."). For the following reasons, this action should be transferred to the Southern District of Florida.

>1. **This Action Could Have Been Brought in the Southern District of Florida.**

This action could have been brought in the Southern District of Florida. "For the purposes of section 1404(a), an action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004). ***First***, the Southern District of Florida has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Epic (a citizen of Wisconsin), Mr. Joao (a citizen of New York), and Decapolis (a citizen of Florida) are diverse and the amount in controversy exceeds $75,000. ***Second***, the Southern District of Florida has specific personal jurisdiction over Epic for purposes of Mr. Joao's "claim" and venue to hear the claim because the claim is already at issue in the Florida action. Epic voluntarily filed the Declaratory Judgment that gave rise to the judgment Epic is seeking to collect on, the same judgment Mr. Joao is seeking to avoid in this case, and the Florida court already has jurisdiction and venue over these issues. 28 U.S.C. § 1391(b)(2).

>2. **Transfer Will Serve the Convenience of the Parties, the Convenience of the Witnesses, and the Interest of Justice.**

Once the Court determines that the action could have been brought in the proposed forum, the Court shall consider whether convenience justifies transfer. *See In re Cuyahoga Equip. Corp.*, 980 F.2d at 117. The Second Circuit considers the following factors: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means

of the parties, (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice. *Guardian Life Ins. Co. of Am.*, 724 F. Supp. 3d at 213.

For the reasons detailed below, the Court should reach the same conclusion as the court in *Blechman*. There, the court held that convenience dictated that the six day later-filed declaratory action be transferred the District of Massachusetts. 668 F. Supp. 2d 399. The court determined convenience dictated the case be transferred because (a) the convenience of the parties and witnesses favored first-filed Massachusetts, (b) the locus of operative facts was in Massachusetts, and (c) Massachusetts law governed over the Massachusetts based contract. *Id*. at 405. As such, because these factors favored transfer, and the remaining factors were neutral, the court transferred the action to Massachusetts. *Id*.

### a.    The Plaintiff's Choice of Forum

Mr. Joao's choice of forum here should be afforded no weight since all facts germane to his claim occurred in Florida and Mr. Joao is using the Declaratory Judgment Act to forum shop and delay Epic's collection efforts. Ordinarily, a plaintiff's choice of forum is entitled to consideration and will not be disturbed unless the defendant shows that the transferee district is a more convenient one, and that the interests of justice would be better served by proceeding there. *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 405 (S.D.N.Y. 2005). "The weight accorded to a plaintiff's choice of venue is significantly diminished, however, where the operative facts have no connection to the chosen district." *Royal & Sunalliance v. Brit. Airways*, 167 F. Supp. 2d 573, 576 (S.D.N.Y. 2001).

Deference to a plaintiff's choice of forum is also not given when the action is for declaratory judgment. *Great Am. Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 584 (S.D.N.Y. 1990) ("Even if the basic requirements for a declaratory judgment action are met, it is still within the discretion of the district court to decline to hear a declaratory judgment action,

particularly when there is a pending proceeding in another court, state or federal, that will resolve the controversies between the parties."). "[A] district court may choose to give little *or no* weight to a declaratory-judgment plaintiff's choice of forum." *Cincinnati Ins. Co. v. O'Leary Paint Co.*, 676 F. Supp. 2d 623, 631 (W.D. Mich. 2009) (emphasis in original).

Here, Mr. Joao's choice of forum for his declaratory judgment action should be afforded no weight. *Id.* The parties have been engaged in related litigation in Florida since February of 2022. *Epic Sys. Corp*, No 9:22-cv-80173-DMM, Dkt. 1. The Florida action has identical, or at least substantially overlapping, factual and legal issues, and the Florida action will resolve the entire dispute between Epic, Decapolis, and Mr. Joao. *See Breckenridge Pharm., Inc. v. KV Pharm. Co.*, No. 08-80963-CIV, 2009 WL 1404698, at *4 (S.D. Fla. May 19, 2009) ("Because the Florida and Missouri Action involve substantial overlapping factual and legal issues, because the instant case seeks a declaratory judgment, and because the Missouri Action, when expanded to include the issues presented in this case, will resolve the entire matter, the Court concludes that Plaintiff's choice of forum is entitled to less than normal deference.").

A court may also give a plaintiff's forum less weight when there is a more convenient forum, or the current forum is not the locus of operative facts. *Indian Harbor Ins. Co.*, 419 F. Supp. 2d at 405. As noted below, Florida provides a far more convenient and efficient path to resolving Mr. Joao's claim. As the precedents recognize, this Court need not give weight to Mr. Joao's forum shopping. *See State Farm Mut. Auto Ins. Co. v. Plunkett*, No. 1:10CV184-SA-JAD, 2011 WL 2670063, at *3 (N.D. Miss. July 7, 2011) (Transferring action because "[f]iling suit in one court while the same action is pending before another judge in the same district will inevitably lead to what can be seen as 'judge shopping' or 'forum shopping.'").

### b.    Convenience of the Parties and Witnesses

The convenience of the parties and witnesses strongly favors transfer. Generally, "[t]he convenience of parties and witnesses is considered the essential criteri[on] under the venue statute." *Guardian Life Ins. Co. of Am.*, 724 F. Supp. 3d at 214. "The convenience of the parties factor does not weigh in favor of transfer where such transfer would merely shift the inconvenience of litigating in a particular forum from one party to the other." *Societe Des Bains De Mer Et Du Cercle Des Etrangers a Monaco v. MGM Mirage*, No. 08CV03157(HB), 2008 WL 4974800, at *7 (S.D.N.Y. Nov. 24, 2008).

Here, the parties are already litigating in Florida, and regardless of the outcome of this motion, the Florida case will continue. Adding a second venue only causes inconvenience to everyone. Mr. Joao, the only known witness to be called in this case, is already a witness in the Florida case. Decapolis is legally "home" in Florida. *See Daimler AG v. Bauman*, 571 U.S. 117 (2014) (holding that a corporate party is treated "at home" where it is incorporated). And, in any event, Decapolis is already a witness in Florida.

The Florida action has already proceeded past final judgment and appeal, and the parties are presently engaged in post-judgment discovery and supplemental proceedings. *Epic Sys. Corp.*, No 9:22-cv-80173-DMM, Dkt. 79; (Loken Decl., Exs. 2–4). The parties and the Southern District of Florida have already expended substantial resources addressing the underlying dispute between the parties that gave rise to this litigation. Judge Middlebrooks is familiar with the parties and the claims. Most importantly, the parties will already be litigating the same issues in Florida. It is a waste of the parties' and this Court's time and resources to duplicate those efforts.

Likewise, because the locus of operative facts is squarely within Florida (*see infra* Sec. IV.B.2.b.), and Florida law applies to piercing the corporate veil and impleading Mr. Joao, Florida provides the most convenient and expedient path forward for the parties. As detailed below, the

16

operative facts of this case revolve around the creation and management of Decapolis, a Florida LLC. Considering the case's procedural posture, the only relevant question remaining in the case is whether Joao is liable for the judgment imposed by the Florida court. Proceeding in this Court will delay the enforcement against Decapolis and Mr. Joao, resulting in duplicative, and therefore wasted, time, resources, and money compared to what will continue in Florida while this action is pending.

Similarly, a related factor sometimes considered by courts is the competing ability of the two courts to compel non-party witnesses who are unwilling to testify. *See Speedfit*, 53 F. Supp. 3d at 577-78. Here, Epic has not identified any non-party witnesses that would need to be compelled to provide testimony, let alone any witnesses that are unwilling to appear. *JetBlue Airways Corp. v. Helferich Pat. Licensing, LLC*, 960 F. Supp. 2d 383, 400 (E.D.N.Y. 2013) ("Neither party has identified a witness unwilling to testify in either the Eastern District of New York or the Northern District of Illinois. [. . .] This issue is of no moment."); *EasyWeb Innov., LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 354 (E.D.N.Y. 2012) (same). Moreover, "as often occurs with out-of-state witnesses located beyond the court's compulsory process, witness depositions could be used at trial if the witness is determined to be unavailable." *Speedfit*, 53 F. Supp. 3d at 577-78 (citing Fed. R. Civ. P. 32(a)(4)). This factor is favorable to transfer.

Accordingly, convenience of the parties and witnesses dictates this action proceed in Florida alongside Epic's related collection effort.

### c.    *Location of Relevant Documents and Ease of Access to Sources of Proof*

This factor, ordinarily not given great weight, is neutral here. "In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly. Furthermore, the location of documents is entitled to little weight unless [the

17

movant] makes a detailed showing of the burden it would incur absent transfer." *Guardian Life Ins. Co. of Am.*, 724 F. Supp. 3d at 215. Here, while the parties will rely on e-discovery that has been produced in the Southern District of Florida, the electronic documents can easily be located and produced. Accordingly, this factor is neutral.

### d.    Locus of Operative Facts

The locus of operative factors favors transfer to Florida. "The locus of operative facts is a primary factor in determining whether to transfer venue." *Tianhai Lace USA Inc. v. Forever 21, Inc.*, 2017 WL 4712632, at *4 (S.D.N.Y. Sept. 27, 2017).

As discussed above, the operative facts revolve around Mr. Joao's creation and management of Decapolis, a Florida LLC having Mr. Joao as its sole member. Whether the Florida court should pierce Decapolis' corporate veil and order Mr. Joao to satisfy the judgment owed to Epic is an issue controlled by Florida law. *See Eckhardt v. United States*, 463 F. App'x 852, 856 (11th Cir. 2012) (Florida law applies in veil piercing action against Florida registered entity); *Blechman*, 668 F. Supp. 2d at 405 (transferring case because, *inter alia*, the claims concerned a contract negotiated in Massachusetts and Massachusetts law applied to the breach claims).

In addition to the governing law, no facts in this case relate to New York other than Mr. Joao's alleged residency in Yonkers, New York. (Dkt. 1-2, ¶ 5). This single fact, when considered against the wealth of facts tied to Florida, cannot carry or upset this factor weighing in favor of transfer to Florida. *See Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 410-11 (S.D.N.Y. 2017) (holding the locus factor focuses on "the degree of relationship between the forum and cause of action" and thus favors transfer when the "center of gravity" of the case is in another forum).

18

e.      *Relative Means of the Parties*

This factor is neutral. Again, the parties are already litigating the same issues in Florida, regardless of the outcome of this motion. Adding an unnecessary, duplicative proceeding only raises the cost of litigation for both parties. And Mr. Joao has nobody to blame but himself for the cost of a new and duplicative suit. Nonetheless, Mr. Joao will probably claim a disparity between himself and Epic, and "[w]here disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Guardian Life Ins. Co. of Am.*, 724 F. Supp. 3d at 215-16. His expected arguments should be rejected.

The post-judgment discovery in Florida reveals that Mr. Joao, by virtue of Decapolis, certainly has the means to continue this case in Florida. The discovery shows that Decapolis' revenues from 2021-2024 were $495,042.76, while its total expenses were a mere $11,676.25. (Loken Decl., Ex. 2). Decapolis' financial statements show that Mr. Joao distributed the settlement funds from the serial patent litigation to himself. (*Id.*). Moreover, Mr. Joao has created at least three other entities in Florida whose sole purpose appears to be channeling nuisance value settlements to Mr. Joao. (*Id.*, Exs. 5, 9).

Discovery has yet to reveal what Mr. Joao did with the nearly half million dollars he distributed to himself, but regardless, the evidence establishes that Mr. Joao has the means to litigate the remaining dispute in Florida. Mr. Joao regularly litigates cases around the country. (*Id.*, Exs. 6, 9). Further, as noted above, Mr. Joao is a member of at least 11 other companies in addition to Decapolis. (*Id.*, Ex. 5). Nearly all of these companies are Florida entities and many likewise engage in similar litigation around the country with nuisance value settlements being the goal. (*Id.*, Exs. 5, 9).

Moreover, given the Florida court's familiarity with the facts and the law, and that the Florida action is proceeding at a reasonable pace, Mr. Joao is likely to waste time and money in

19

New York while the Florida court reaches a decision on the final merits. Accordingly, because both parties have the means to address the issues in Florida, this factor is neutral.

### f.    The Two Forums' Familiarity with the Governing Law

This factor favors transfer because Florida law applies. Whether the court should pierce Decapolis' corporate veil and hold Mr. Joao liable for the judgment Decapolis owes to Epic is a question of Florida law. *See Eckhardt*, 463 F. App'x at 856 (applying Florida law in veil piercing action). Although Mr. Joao cites New York LLC Law § 609 in his complaint (Dkt. 1-2, ¶ 41), New York law is not properly applied in this case. *See Eckhardt*, 463 F. App'x at 856. Because the Florida court is innately familiar with both Florida law and with the facts of this case, the factor favors transfer to Florida.

### g.    Trial Efficiency and the Interest of Justice

Trial efficiency and the interest of justice heavily favors transfer. Again, the Florida court will already be litigating these issues no matter what happens with this motion. Duplicating those efforts is not in the interests of judicial efficiency. In fact, it is clear that Mr. Joao is seeking to usurp the authority of the Florida court and avoid the Florida judgment by filing this action. Moreover, the Florida court is already familiar with the parties and discovery has even begun on the immediate issues to be resolved. Finally, the relative docket speed favors transfer.

"The Court's consideration of whether transfer is in the interest of justice is based on the totality of the circumstances, and relates primarily to issues of judicial economy." *Indian Harbor Ins. Co.*, 419 F. Supp. 2d at 407. "One of these circumstances is the posture of the case." *Guardian Life Ins. Co. of Am. v. Coe*, 724 F. Supp. 3d at 216. "[D]ocket conditions or calendar congestion of both the transferee and transferor districts is a proper factor and is accorded some weight." *Indian Harbor Ins. Co.*, 419 F. Supp. 2d at 407. Additionally, "[a] court's familiarity with the case is certainly an issue to be considered in connection with this factor." *Id.*

The current posture of this action and the Florida action favors transfer. Due to the early stages of this action, neither party nor this Court would duplicate any efforts if the case were transferred as neither party has engaged in discovery in this action. Conversely, the Florida action has already reached final judgment, and the parties are engaged in post-judgment discovery. *Epic Sys. Corp.*, No 9:22-cv-80173-DMM, Dkt. 79. The Florida court is also aware of the parties' ongoing post-judgment discovery and granted Epic's Motion for Writ of Execution. *Id.*, Dkt. 122. In sum, the Southern District of Florida is familiar with the case and is able to resolve the remaining issues without unnecessary repetition or waste. Indeed, that action will continue regardless, so the parties' and this Court's time and resources will be wasted if this case remains in New York.

Further, the parties may obtain faster resolution of this case in Florida. Besides the fact that the Florida court is familiar with the case, the Southern District of Florida has less docket congestion. There are currently 9,777 open cases in this District across 28 judges, whereas the Southern District of Florida currently has 4,248 open cases across 18 judges. (Loken Decl., Ex. 7). This District also has a significantly higher median time for resolving all motion types. The Southern District of Florida's median days to rule on all types of motions is 31 days while the Southern District of New York's is 177 days. (*Id.*, Ex. 8). Because the time to an ultimate resolution would likely be shorter, this factor weighs in favor of transfer.

Finally, justice will be served by having a dispute about the liability of a Florida LLC and its sole member heard in Florida. This dispute was commenced in Florida because Decapolis is located there and organized under Florida's laws. Mr. Joao, as the sole member of Decapolis, elected to avail Decapolis and himself of Florida laws should disputes regarding his company and the management thereof be called into question. Allowing Mr. Joao to both forum and judge shop would be against the interests of justice.

In sum, five of the eight factors weigh in favor of transfer: convenience of parties, convenience of witnesses, locus of operative facts, the forums' familiarity with governing law, and trial efficiency and the interest of justice. The remaining three factors are neutral: plaintiff's choice in forum (which must be ignored in this case, in light of the first to file rule and Mr. Joao's use of the Declaratory Judgment Act to forum shop), location for relevant documents, and relative means of the parties. Accordingly, this action should be transferred to the Southern District of Florida. In addition or alternatively, this case should be transferred under the first-to-file rule.

## V.    CONCLUSION

For the foregoing reasons, Defendant Epic Systems Corporation respectfully requests that this action be transferred to the Southern District of Florida pursuant to the first-to-file rule and 28 U.S.C. § 1404(a).

QB\94324031.5

Respectfully submitted this 5th day of February, 2025.

   */s/ Bryce A. Loken*
Kristin Graham Noel (*Pro hac vice*)
Matthew J. Duchemin (*Pro hac vice*)
Bryce A. Loken (*Pro hac vice*)
QUARLES & BRADY LLP
33 East Main Street, Suite 900
Madison, WI 53703
Tel.: (608) 251-5000
kristin.noel@quarles.com
matthew.duchemin@quarles.com
bryce.loken@quarles.com

Mitchell D. Cohen
VEDDERPRICE
1633 Broadway, 31st Floor
New York, NY 10019
Tel.: (212) 407-6980
mcohen@vedderprice.com

*Attorneys for Defendant Epic Systems Corporation*

## CERTIFICATE OF WORD COUNT

I hereby certify that pursuant to Local Rule 7.1(c), this memorandum of law does not exceed 8,750 words. This memorandum, exclusive of the cover page, table of contents, and table of authorities, contains 7,014 words.

*/s/ Bryce A. Loken*
Bryce A. Loken

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2025, I caused to be electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Bryce A. Loken*
Bryce A. Loken
